IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID H. RED CLOUD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:05-cv-639-DGW |
| ) | |
| JO ANNE B. BARNHART ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This matter is before the Court on the Petition for Review of the Commissioner's Decision Denying Benefits (entitled "Plaintiff's Brief") filed by this plaintiff, David H. Red Cloud, on December 12, 2006 (Doc. 11).  For the reasons set forth below, the final decision of the Commissioner of Social Security denying benefits is **AFFIRMED.**

### BACKGROUND

**Procedural History**

The plaintiff, David H. Red Cloud, applied for Disability Insurance Benefits on November 13, 2002, alleging an onset date of May 15, 2001 (Tr. 53-56).  His claim was initially denied on January 15, 2003 (Tr. 31-34), and upon review on May 1, 2003 (Tr. 36-39).  The plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on June 10, 2004 (Tr. 296-328).  After the hearing, ALJ Marsha R. Stroup issued an unfavorable decision on September 1, 2004 (Tr. 15-25).  Plaintiff requested Appeals Council review of the decision.  The Appeals Council denied review on July 22, 2005 (Tr. 4-6), which constituted the final review of the agency.

**Medical History**

Prior to plaintiff's alleged onset of disability in May 2001 (Tr. 36-39), the Department of Veteran's Affairs (VA) treated plaintiff for several complaints, including chest pain, hiatial hernia, gatroesophageal reflux disease (GERD), hyperlipidemia (high cholesterol), and hypertension (high blood pressure) (Tr. 218-252).  In August 2001, VA physicians diagnosed plaintiff with elevated liver enzymes, gastritis, and a history of hepatitis (Tr. 164).  Later, in February 2002, plaintiff experienced a severe episode of chest pain that lead to an ER visit (Tr. 149).  An upper gastrointestinal study conducted in March 2002, revealed a duodenal bulb ulceration (Tr. 224).  Following plaintiff's continuing complaints of gastric discomfort, plaintiff submitted to a diagnostic study in July 2002 (Tr. 124).  Results showed marked gastroesophageal reflux, associated mucosal thickening in the distal segment of the esophagus, and a small, sliding-type hiatal hernia with no evidence of esophageal obstruction (Tr. 124).  Plaintiff experienced similar problems through January 2003, complaining of reflux after eating and drinking, as well as ongoing chest pain (Tr. 111).

In addition to plaintiff's chest pains and gastrointestinal discomfort, plaintiff concurrently complained of joint problems.  In July 2001, plaintiff underwent surgery for a left foot, saddlebone deformity (Tr. 185-216).  Followup treatments suggested plaintiff's heel was healing normally, and plaintiff did not report any difficulties or pain (Tr. 168-178).  Later, in January 2002, plaintiff sought treatment for knee pain after he experienced popping in his left knee while walking (Tr. 159).  In March 2002, plaintiff visited an orthopedist, complaining of knee pain (Tr. 142-43).  The orthopedist diagnosed plaintiff with left knee medial joint pain and degenerative joint disease (Tr. 143). Plaintiff then submitted to two MRIs over the next two months: the first, in March 2002, revealed minimal osteoarthritis in the left knee (Tr. 225), while the second, in

April 2002, revealed degenerative or traumatic arthritis in the left knee joint (Tr. 222).  Later, in July 2002, plaintiff's submitted to an occupational therapy evaluation after complaining of thumb pain (Tr. 129).  The therapist found limited range of motion in plaintiff's thumb and reduced left hand grip strength (Tr. 124).

   Plaintiff's knee pain continued into 2003.  In March 2003, plaintiff rated his knee pain at five out of ten after taking his medication (Tr. 106).  In July 2003, after experiencing difficulties walking and moving, plaintiff requested testing for arthritis (Tr. 105).  Examination revealed crepitation in plaintiff's joints, but laboratory testing indicated rheumatoid factors were within normal range (Tr. 291).  In August 2003, an MRI demonstrated degenerative joint disease with joint effusion in the right ankle, early degenerative joint disease in the right knee, and a medial meniscus tear with joint displacement in the left knee, as well as abrasion of medial femoral condyle, narrowing of the medial condylar surface, and inner condylar notch osteophytes (Tr. 290).  The same month, the VA elevated plaintiff's disability status from 50 to 100% (Tr. 291).

   Beginning in August 2003, plaintiff sought treatment from William P. Thorpe, M.D., an orthopaedic surgeon, who determined that plaintiff was a candidate for surgical intervention to repair his right knee (Tr. 264).  In late August 2003, Thorpe performed an anterior curciate ligament repair, partial menisectomy, synovectomy, and multiple chondroplasties of the left leg (Tr. 263-4).  In September 2003, Dr. Thorpe further performed arthroscopic surgery of the right ankle, debridement of the tibial talar osteophytes, a synovectomy, and laser repair of the lateral collateral ligament (Tr. 260).  Following the surgeries, plaintiff's left knee was doing well, although plaintiff reported that his right knee continued to have popping, clicking and swelling (Tr. 259.)

On May 12, 2004, Dr. Thorpe evaluated plaintiff's functional capabilities (Tr. 253-7). Dr. Thorpe concluded that plaintiff was capable of sitting for eight hours, standing for two hours, and walking for two hours (Tr. 254). In Dr. Thorpe's assessment, plaintiff could complete an eight hour work day without lying down or reclining (Tr. 254), but could not climb stairs, ladders, or be exposed to unprotected heights (Tr. 254). Further, plaintiff could reach shoulder level and operate foot controls (Tr. 254). Dr. Thorpe found that plaintiff could lift or carry ten pounds frequently and twenty pounds occasionally (Tr. 255). Plaintiff could withstand frequent vacillation between temperature extremes, and could tolerate occasional exposure to dust, fumes, and gases (Tr. 255). Additionally, plaintiff was able to use his hands and arms for repetitive actions such as pushing and pulling, simple grasping, and fine manipulations (Tr. 256). Dr. Thorpe reported that plaintiff complained of pain in his both his right and left knees, and his right ankle (Tr. 256); this pain was continuous, moderately severe, and precipitated by movement (Tr. 256).

Beginning in June 2003, John Earnhart, M.D., also treated plaintiff as his general physician (Tr. 274). Dr. Earnhart diagnosed plaintiff with bilateral arthritis of his knees, GERD, controlled high cholesterol, and erectile dysfunction (Tr. 276). In February 2004, Dr. Earnhart treated plaintiff for problems with anxiety (Tr. 275). Dr. Earnhart also made a report assessing plaintiff's functional abilities (Tr. 265-9). In Dr. Earnhart's assessment, plaintiff could not work any part of an eight hour workday (Tr. 266). Additionally, plaintiff could perform no postural activities (sitting, walking or standing) (Tr. 266), could not lift or carry any weight (Tr. 267), could not push or pull, perform simple grasping, or fine manipulations (Tr. 268). Dr. Earnhart noted plaintiff's complaint of pain in both of his knees, his right ankle, both hands, and both

elbows (Tr. 268). Dr. Earnhart assessed plaintiff's pain as being "moderately severe" (Tr. 268), and occurring "every day, most of the day" (Tr. 268). Dr. Earnhart noted that "walking, standing, [and] lifting" precipitated plaintiff's pain symptoms (Tr. 268).

      Both plaintiff and a vocational expert, Dr. Thomas Upton, testified at the hearing. Plaintiff stated that he is married and living with his wife and their two children (Tr. 300). Plaintiff further testified that, without the braces he wore, his knees have given out on him (Tr. 304), noting that he has fallen when his knees have given out (Tr. 305). He also stated that his knees are continuously painful, even while sitting (Tr. 305), despite the hydrocodone (vicodin) he took daily for pain (Tr. 305). Plaintiff ranked his knee pain as an eight on a scale of one to ten (Tr. 306). Due to his chronic pain, plaintiff reported trouble concentrating and discomfort when sitting for more than 20 minutes at a time (Tr. 316). Additionally, plaintiff testified that GERD and his hiatial hernia cause constant daily pain, severe enough that sometimes he has had to lie down (Tr. 319). Plaintiff stated that his combined joint and chest pains cause him to be bedridden between three and four days a month (Tr. 320).

      Dr. Thomas Upton testified as a vocational expert (VE) (Tr. 320). ALJ Stroup framed a hypothetical question for Dr. Upton, inquiring whether a person of the plaintiff's education and work experience could find unskilled, sedentary jobs that involve no crouching, crawling, or kneeling (Tr. 323). Under this hypothetical, the VE testified that plaintiff could work as a telemarketer, a telephone operator, an assembly worker, a production inspector, or as a hand packager (Tr. 323). After ALJ Stroup limited the hypothetical to jobs where an employee could "stand up a few minutes each hour to stretch his legs out and relieve his knee," without leaving the work station, Upton testified that most or all of the work he had suggested would fit this

parameter (Tr. 323). Additionally, most of the unskilled, sedentary jobs the VE suggested would further permit plaintiff to elevate his legs on a small box or crate to relieve knee pain (Tr. 325). Dr. Upton further testified that, were plaintiff to go off task due to pain-induced failure to concentrate four to five times an hour, he would be unable to work at the sedentary level (Tr. 325). Additionally, Upton testified that continuous pain at a moderately severe level would preclude any type of employment (Tr. 327).

## DISCUSSION

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. 42 U.S.C. §405(g) ("[t]he findings of the Commissioner of Social Secuirty, as to any fact, if supported by substantial evidence, shall be conclusive ..."); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2005) (stating that "the reviewing court is not allowed to substitute its judgment for the ALJ's by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility") (quotation marks and citations omitted). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1972) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 101 (1938)). See also Sims v. Barnhart, 309 F.3d 424, 428 (7th Cir. 2002); Green v. Shalala, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. Golembiewski, 322 F.3d at 915; Cannon v. Apfel, 213 F.3d 970, 974 (7th Cir. 2000). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." Lopez ex. rel. Lopez v. Barnhart,

336 F.3d 535, 539 (7th Cir. 2003).

Supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. 20 C.F.R. §416.920. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." 20 C.F.R. §416.920(c). If he is, the claimant is not disabled and the evaluation process is over; if he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits ... physical or mental ability to do basic work activities." 20 C.F.R. §416.920(c). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. 20 C.F.R. §401, pt. 404, subpt. P, app. 1. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" (RFC) and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. 20 C.F.R. §416.920(e). However, if the claimant shows that her impairment is so severe that she is unable to engage is past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, if light of her age, education, job experience and functional capacity

to work, is capable of performing other work and that such work exists in the national economy. 42 U.S.C. §423(d)(2); 20 C.F.R. §416.920(f).

Plaintiff first argues that the ALJ improperly discounted his assertions of disabling pain. In considering plaintiff's allegations of pain, the Defendant "determine[s] the extent to which [][Plaintiff's] alleged functional limitations and restrictions due to pain or other symptoms can reasonable be accepted as consistent with the medical signs and laboratory findings and other evidence ... ." 20 C.F.R. §404.1529(a); see also 20 C.F.R. §416.929(a). Social Security Regulations (SSRs) elaborate that an ALJ should consider the entire record in making a credibility assessment of a plaintiff's assertion of pain. SSR 96.7p(4). An ALJ is also required to provide "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p(5). In addressing plaintiff's assertions of pain, ALJ Stroup reviewed both the medical evidence and plaintiff's testimony, concluding that:

> In light of the foregoing, the undersigned finds the claimant to be mostly credible. He did, however, state that he could not sit for six hours in an eight hour day. This seems unlikely in light of the claimant's other testimony indicating that he cared for his daughter and slept only when she slept. Further he never alleged any difficulties sitting to his physicians. In fact, Dr. Earnhart wrote in his treating source opinion at Exhibit 4F/4 that "walking, standing, lifting" were the activities that precipitated the claimant's pain. Likewise, Dr. Thorpe wrote that "all movement" precipitated the pain. Neither physician wrote that prolonged sitting aggravated the claimant's pain. Thus, the undersigned finds the claimant's statement that he is incapable of sitting for six of eight hours in an eight hour workday to be less than credible.

> (Tr. 22.)

The ALJ's treatment of plaintiff's allegations of pain and her reasoning for discounting those allegations is therefore sufficient.

An ALJ's credibility assessments are "entitled to 'special deference.'" <u>Sienkiewicz v. Barnhart</u>, 409 F.3d 798, 803 (7th Cir. 2005) (quoting <u>Scheck v. Barnhart</u>, 357 F.3d 697, 703 (7th Cir. 2004)).  While ALJ Stroup found plaintiff credible in his complaints of pain generally, she did not credit his statement that his pain prevented him from sitting for six hours in an eight hour day (<u>See</u> Tr. 22).  While plaintiff correctly observes that, where pain is at issue, subjective evidence of pain cannot be discounted solely for the lack of objective medical evidence, SSR 96-7p(4), that is not the case here.  The ALJ evaluated plaintiff's testimony regarding his daily activities, noting that he claims to have cared for his daughter while his wife worked, resting only when she slept (Tr. 22).  The ALJ reasoned that plaintiff's stated responsibilities in caring for his child suggest the ability to work for six hours without rest.  Additionally, the ALJ notes that plaintiff never alleged any difficulties in sitting to either of his two physicians.  Dr. Earnhart, in his report, noted that plaintiff's pain was precipitated by "walking, standing, lifting" (Tr. 22). Similarly, Dr. Thorpe remarked in his evaluation that "all movement" precipitated plaintiff's pain (Tr. 22).  Given that the ALJ's credibility assessment is based on inconsistencies in plaintiff's testimony, combined with the evaluation of his daily activities, his pain's precipitating factors, and his doctors' objective medical reports, this Court cannot conclude that ALJ Stroup's reasoning was "patently wrong."  <u>See Skarbek v. Barnhart</u>, 390 F.3d 500, 504-5 (7th Cir. 2004).

Next, plaintiff's contends that ALJ Stroup improperly disregarded plaintiff's medications and how their side effects impacted his ability to maintain a job.  Specifically, plaintiff asserts that ALJ Stroup acknowledged plaintiff's use of hydrocodone to manage his pain and that this

medication made him drowsy (Tr. 19). The ALJ further recognized that plaintiff complained of hydrocodone-induced drowsiness to his treating physician (Tr. 19, citing Tr. 275 ). Despite this recognition, plaintiff argues that the ALJ never addressed the impact this drowsiness might have had on plaintiff's functional abilities, specifically on his ability to sit for eight hours a day. Additionally, plaintiff asserts that ALJ Stroup failed to consider the effects of his pain or his medications' side effects on his concentration, and how this would impact his functional abilities. At the hearing, the ALJ asked Dr. Upton: "if because of either [a] combination of pain or medication [Plaintiff's] ability to concentrate was – he would go off task, I don't know, maybe four or five times an hour, where his mind would wander off ... [c]ould he still be productive at these jobs?" Dr. Upton answered that plaintiff could not be productive under such circumstances on an ongoing basis, even in unskilled jobs (Tr. 325). Plaintiff argues that the ALJ's finding him restricted to sedentary work despite Dr. Upton's response fails to build a proper bridge from the evidence to her conclusion.

Although ALJ Stroup might have strengthened the bridge between the evidence and her conclusion, remanding for this reason would be an exercise in futility. See Shramek v. Apfel, 226 F.3d 809, 814 (7th Cir. 2000). Generally, reviewing courts give great deference to an ALJ's determinations, Collins v. Barnhart, 114 Fed. Appx. 229, 233 (7th Cir. 2004) (internal citations omitted), and "give the [ALJ's decision] a commonsensical reading rather than nitpicking it," Shramek, 226 F.3d at 811 (internal citations omitted). Ultimately, the ALJ's conclusion is supported by substantial evidence. First, plaintiff's assertion that the ALJ did not adequately consider plaintiff's complaints concerning his medication's side effects is factually incorrect. While the ALJ specifically noted plaintiff's past complaint of drowsiness, she further observed

that he had not made any recent complaints of side effects (Tr. 19). In addition, the ALJ asked plaintiff at the hearing if he experienced any side effects from the hydrocodone (Tr. 306). Plaintiff responded that this medication made him "a little dizzy" (Tr. 306), but did not complain of drowsiness. Further, despite having taken hydrocodone earlier that morning, plaintiff testified to driving to the hearing that day (Tr. 306). Given that plaintiff had not recently complained of side effects from hydrocodone, did not complain of drowsiness when specifically asked by the ALJ at the hearing, and was able to operate his vehicle despite having taken the medication, the ALJ's finding demonstrates consideration for any side effects of plaintiff's medication and their effect on plaintiff's ability to maintain a job.

Second, plaintiff's argument that ALJ Stroup failed to consider the effects of his pain or his medication on his concentration is similarly unpersuasive. Despite plaintiff's contentions, the ALJ did consider plaintiff's "inability to focus ... and [in]ability to maintain concentration," concluding that these conditions "did not constitute more than a mild impairment as described." (Tr. 20). Additionally, as noted in defendant's brief, the ALJ found that plaintiff's functional capabilities limited him to sedentary work, including unskilled work. Such work requires, "little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §404.1568(a). The ALJ's conclusion that impaired concentration would not inhibit such work is therefore reasonable and supported by substantial evidence.

Plaintiff also argues that ALJ Stroup's decision is not supported by substantial evidence and is internally inconsistent. Plaintiff asserts that the ALJ, in finding plaintiff capable of sedentary work, specifically adopted Dr. Thorpe's RFC (Tr. 23). Thorpe's RFC stated that plaintiff suffers from moderately severe continuous pain. The VE reviewed Dr. Thorpe's RFC

11

and concluded that such pain would preclude plaintiff from successfully working the sedentary jobs he had identified (Tr. 326-7).

This Court is not persuaded by plaintiff's argument. Under Social Security Regulations, the ALJ (and not a medical or vocational expert) ultimately determines the claimant's residual functional capacity. See 20 C.F.R. §416.920(e). Here, ALJ Stroup made the determination, having considered plaintiff's allegations of pain, that plaintiff retained the residual functional capacity to perform sedentary work, based both on Dr. Thorpe's evaluation and on her assessment of plaintiff's credibility regarding his limitations (Tr. 23). The ALJ determined that the plaintiff "could perform the full demands of the full range of sedentary work" (Tr. 24). When asked to consider Dr. Thorpe's opinion regarding plaintiff's level of pain, the VE was evaluating a non-vocational issue.

Additionally, although ALJ Stroup questioned Dr. Upton as a vocational expert, she ultimately based her determination of disability on the vocational grid (See Tr. 24 ("a finding of 'not disabled' is directed by Medical-Vocational Rule 201.28.")) Under applicable Social Security Regulations, "a vocational expert is not a required or even essential part of a disability benefits hearing ... [t]he decision whether to employ the services of a vocational expert is entirely within the discretion of the ALJ ... where appropriate, the ALJ may use the Medical/Vocational Guidelines or 'grid' to determine whether the claimant may perform a significant number of jobs." Binion v. Shalala, 13 F.3d 243, 246 (7th Cir. 1994), citing Earnhart v. Secretary of HHS, 969 F.2d 534, 540 (7th Cir. 1992) (internal citations omitted). In relying on the vocational grid, the ALJ's findings that plaintiff's limitations would not prevent him from performing unskilled, sedentary work are proper.

## CONCLUSION

For the foregoing reasons, the final decision of the Commissioner of Social Security denying benefits is **AFFIRMED** and the Clerk of Court is directed to enter judgment accordingly.


**DATED: July 27, 2006**

*s/ Donald G. Wilkerson*
**DONALD G. WILKERSON**
**United States Magistrate Judge**
